UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEXANDER CLARK | CIVIL ACTION |
| VERSUS | NO. 22-326-JWD-RLB |
| JEAN HOTARD, ET AL. | |

### ORDER

Before the Court is Sheriff Ard, Deputy Bowden, and Deputy Hotard's (collectively, the "LPSO Defendants") Motion to Stay. (R. Doc. 102). The motion is opposed. (R. Doc. 113). The LPSO Defendants filed a Reply. (R. Doc. 119).

Also before the Court is Plaintiff's Motion to Compel Discovery Responses. (R. Doc. 103). The motion is opposed. (R. Doc. 114).

### I.     Background

On May 19, 2022, Alexander Clark ("Plaintiff") commenced this civil rights action under 42 U.S.C. § 1983 and state law, naming as defendants Livingston Parish Deputy Jean Hotard ("Deputy Hotard"), Livingston Parish Deputy Calvin Taylor Bowden ("Deputy Bowden"), Livingston Parish Sheriff Jason Ard ("Sheriff Ard"), Denham Springs Police Officer Sydney McCullough ("Officer McCullough"), Denham Springs Police Chief J. Shannon Womack ("Chief Womack"), and the City of Denham Springs ("the City"). (R. Doc. 1). Plaintiff, a Black man 66 years of age at the time of the underlying incident, alleges that the defendant officers "stopped, searched, detained, harassed, and brutalized" him "without probable cause, leaving him severely injured and unable to earn a living for more than two years." (R. Doc. 89 at 2-3).

Plaintiff makes the following allegations regarding his arrest. After a day of work putting up drywall and painting, Plaintiff started heading home in his truck at approximately 11:30 p.m.,

picked up a friend walking on the road, and then stopped for gas. (R. Doc. 89 at 8). Prior to exiting the gas station, which was closed, Plaintiff was stopped by Deputy Hotard in his patrol vehicle, who was subsequently joined by Deputy Bowden. (R. Doc. 89 at 8-10). Plaintiff provided the officers with his driver's license and registration, but the officers searched Plaintiff's vehicle and person without his consent, finding on his person a "Quick Connect compressor attachment piece used in drywalling" and a $20 bill. (R. Doc. 89 at 10-13). After Deputy Hotard questioned Plaintiff about the $20 bill (and what appeared to be drug residue on the bill), Plaintiff "took his $20 bill back" from the officer, who then handcuffed him. (R. Doc. 89 at 10-14). Officer McCullough then arrived on the scene and called in a code "108" over dispatch to signal that there was an "officer down/officer in danger." (R. Doc. 89 at 13). As a result of the arrest, Plaintiff suffered fractured bones and torn ligaments in his right arm and right hand as confirmed by two MRIs. (R. Doc. 89 at 18-19).

Plaintiff was charged with violation of La. R.S. 32:104 (failure to use turn signal) and La. R.S. 14:108 (resisting an officer). (R. Doc. 89 at 18). While the first charge was dropped, Plaintiff was ultimately found guilty of a later-added charge of misdemeanor obstruction of justice (La. R.S. 14:130.1). (R. Doc. 89 at 18).

Plaintiff seeks relief under against some or all of the LPSO Defendants with respect to 11 interrelated counts raised in the pleading: false arrest (federal law); false imprisonment (state law); excessive force/battery (state law); excessive force (federal law); negligence in handcuffing (state law); unreasonable search of person and invasion of privacy (federal and state law); excessive force (federal *Monell* liability); failure to investigate excessive force (federal *Monell* liability); denial of equal protection (federal and state law); intentional race discrimination (federal law); and conspiracy to violate equal protection (federal law). (R. Doc. 89 at 40-54).

2

Plaintiff seeks declaratory and injunctive relief, compensatory damages, punitive damages, and recovery of attorney's fees and costs. (R. Doc. 89 at 54-56).

On October 26, 2022, the district judge stayed the proceedings pending resolution of ongoing criminal proceedings against Plaintiff. (R. Doc. 47).

After Plaintiff was convicted, the stay was lifted on July 17, 2023. (R. Doc. 53). The parties then submitted a Joint Status Report proposing deadlines in this action. (R. Doc. 62). The Court issued a Scheduling Order providing, among other things, that non-expert discovery must be completed by August 30, 2024. (R. Doc. 68).

The Amended Complaint was filed into the record on December 4, 2023. (R. Doc. 89).

On January 16, 2024, the LPSO Defendants simultaneously filed an Answer (R. Doc. 99) and Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(c) (R. Doc. 100). Plaintiff then filed a Motion to Strike the LPSO Defendants' Affirmative Defenses pursuant to Rule 12(f). (R. Doc. 105). These dispositive motions remain pending with the district judge.

In relevant part, the LPSO Defendant's Motion to Dismiss seeks dismissal of all claims against Deputy Hotard and Deputy Bowden for false imprisonment, racial discrimination, denial of equal protection, conspiracy to violate equal protection, and illegal search under *Heck v. Humphrey*, 12 U.S. 477 (1994). The LPSO Defendants also seek dismissal of all claims for excessive force and failure to investigate excessive use of force brought against Sheriff Ard in his official capacity on the basis that Plaintiff failed to make sufficient factual allegations to support liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Finally, while the LPSO Defendants do not raise the defense of qualified immunity in their Motion to Dismiss, Plaintiff seeks an order striking that defense from the Answer. (*See* R. Doc. 105).

3

On February 1, 2024, the LPSO Defendants filed their Motion to Stay Discovery, which seeks a stay of discovery in light of their arguments that Plaintiff's claims are subject to dismissal pursuant to the *Heck* doctrine and for failure to meet the pleading standards with respect to the *Monell* claims. (R. Doc. 102). The next day, Plaintiff filed his Motion to Compel, which seeks certain supplemental written responses and productions from the LPSO Defendants. (R. Doc. 103).

**II.    Law and Analysis**

    **A.    Legal Standards**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

If a party fails to respond fully to written discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses

and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

"Trial courts possess broad discretion to supervise discovery." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted). "A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). Courts also consider "(1) hardship and inequity on the moving party without a stay; (2) prejudice the non-moving party will suffer is a stay is granted; and (3) judicial economy." *See Strong ex rel. Tidewater, Inc. v. Taylor*, No. 11-392, 2013 WL 818893, at * 2 (E.D. La. Mar. 5, 2013). "A stay while a dispositive motion is pending is the exception rather than the rule." *Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*, No. 20-2795, 2021 WL 7708048, at *10 (E.D. La. May 21, 2021).

**B.    Analysis**

Having considered the arguments of the parties submitted with respect to both the LPSO Defendant's Motion to Stay and Plaintiff's Motion to Compel, the Court concludes that a stay of discovery is merited pending the resolution of the LPSO Defendant's Motion to Dismiss (R. Doc. 100) and Plaintiff's Motion to Strike (R. Doc. 105).

1.      **The *Heck* Doctrine**

The *Heck* doctrine precludes recovery under Section 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 12 U.S. at 487. There is no dispute that Plaintiff was convicted of misdemeanor obstruction of justice (La. R.S. 14:130.1) with respect to the underlying incident.

Having considered the record and the arguments of the parties, the Court finds good cause to stay discovery with respect to claims potentially subject to dismissal under the *Heck* doctrine (*i.e.*, Plaintiff's claims for false arrest, false imprisonment, illegal search, equal protection, discrimination, and conspiracy against Deputy Hotard and Deputy Bowden). The district judge in this action has previously stayed discovery where a motion to dismiss raised "strong arguments on *Heck* that appear to be close call." *Sneed v. Abbot*, No. 21-279-JWD-RLB, 2021 WL 2877239, at *4 (M.D. La. June 29, 2021); *see also Sneed v. Abbott*, 2021 WL 3057429, at *20 (M.D. La. July 20, 2021) (dismissing claims under the *Heck* doctrine).

The undersigned's review of the pending Motion to Dismiss indicates that the LPSO Defendants have likewise raised strong arguments with respect to the application of the *Heck* doctrine. Moreover, the parties address these substantive arguments in support of their respective positions regarding whether a stay is merited pending the district judge's determination of whether the *Heck* doctrine applies. To avoid the possibility of inconsistent rulings, it is appropriate under these circumstances to stay all discovery directed at the LPSO Defendants subject to potential dismissal under the *Heck* doctrine. *See Martin v. Roy*, No. 20-339-JWD-EWD, 2021 WL 890582, at *3 (M.D. La. Mar. 9, 2021) ("Considering that these issues are raised in the Motion to Dismiss, which is currently pending before the District Judge assigned to

this case, and to avoid the possibility of inconsistent rulings, the Motion to Stay will be granted.").

### 2. *Monell* Liability

The Court also finds good cause to stay discovery with respect to Plaintiff's *Monell* claims directed at Sheriff Ard in his official capacity. The Court is aware that the LPSO Defendants rely largely on decisions denying discovery for the purposes of establishing a claim in an amended pleading where the court determines that the plaintiff has failed to state a claim. (*See* R. Doc. 102-1 at 4-7). Here, the LPSO Defendants are requesting a stay of discovery prior to a ruling on whether Plaintiff has properly pled his *Monell* claims as alleged in the Amended Complaint. Nevertheless, given the breadth of the discovery in dispute, the Court finds good cause to stay discovery until the district judge determines whether Plaintiff has pled valid *Monell* claims.

"To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell*, 436 U.S. at 691)). The plaintiff must allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle*, 613 F.3d at 541-42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

Here, Plaintiff alleges that Sheriff Ard "has a policy or custom of issuing traffic-stop citations and resisting-arrest charges in a racially discriminatory manner," a "policy or custom of discriminating against Black drivers in effectuating traffic stops and in citing or arresting drivers," "custom or practice of over-policing and racial discrimination in issuing traffic

citations, such as the failure to use a turn signal, which result in unreasonable searches, prolonged detentions and the use of excessive force against Black drivers," and/or "a custom or practice of falsely reporting that an arrestee who was subjected to the use of excessive force was resisting arrest so deputies can avoid discipline for excessive force violations." (R. Doc. 89 at 23, 24, 47). Plaintiff also alleges that "Sheriff Ard has implemented inadequate policies regarding the investigation and discipline regarding officer misconduct." (R. Doc. 89 at 48).

The undersigned is not in a position to determine whether the foregoing allegations will survive dismissal under Rule 12(c). It is clear, however, that Plaintiff is seeking a wide-range of discovery to substantiate the *Monell* claims brought against Sheriff Ard, including documentation relevant to virtually any complaints or investigations regarding "the failure to investigate officers for reported misconduct, including but not limited to, unreasonable searches or seizures of Persons or vehicles, false arrests, excessive use of force, racial profiling, racial discrimination, and the failure to investigate citizen complaints" for over the past seven years. (*See* R. Doc. 103-1 at 13). Plaintiff also seeks, among other things, any complaints "against Defendant Sheriff Ard and his employees or agents relating to the Livingston Parish Sheriff's Office . . . including but not limited to any and all internal affairs, intra- or interdepartmental, and citizen complaints alleging racial profiling; racial discrimination or bias; the use of excessive force; injury, assault, or battery; false arrest; unreasonable search or seizure; unlawfully prolonged detention; failure to investigate and discipline police officers or other employees of Defendant Sheriff Ard or LPSO; malicious prosecution; fabrication, concealment, or planting of evidence; and lawsuits or administrative complaints filed in state or federal courts or agencies alleging police misconduct." (*See* R. Doc. 103-1 at 16).

The parties dispute whether Plaintiff attempting to conduct discovery in an attempt to obtain facts necessary to meet the Rule 8 pleading standard with respect to the *Monell* claims. As the LPSO Defendants point out, Plaintiff's own arguments in opposition to the Motion to Dismiss support a finding that Plaintiff is seeking discovery for the purposes of setting forth a plausible claim that would survive the pending Rule 12(c) challenge:

- "Plaintiff would request that additional discovery be allowed to resolve these claims, including submission of the transcript of Plaintiff's criminal trial."

- "Plaintiff will be able to further identify the policies or widespread practices at issue, of over-policing and racial discrimination, with further specificity once he receives discovery materials from the LPSO Defendants that they have so far withheld."

- "These records against deputies in the LPSO as well as complaints (including those alleging racial profiling and related officer misconduct) will be crucial to establishing the policies Plaintiff alleges, yet the LPSO Defendants have been unwilling to produce them."

- "[T]he Court should not reward Defendants' refusal to engage in the discovery process by dismissing Plaintiff's claim with prejudice before Plaintiff receives the evidence he has long requested and is entitled to receive."

- "Plaintiff would be able to better identify the widespread practice at issue with further specificity but for Defendants' unwillingness to engage in the discovery process."

(R. Doc. 104 at 10, 22-24). Given the foregoing representations made in opposing dismissal, the breadth of the allegations regarding potential *Monell* liability, and the breadth of the discovery sought to substantiate those claims, the undersigned finds good cause to stay such discovery to protect Sheriff Ard from undue burden and expenses until the district judge determines whether, and to what extent, Plaintiff's claims for *Monell* liability may proceed.

The Court need not decide at this time, however, whether and to what extent Plaintiff is entitled to any of the discovery at issue in Plaintiff's Motion to Compel. It is sufficient for the Court to observe that the LPSO Defendants have met their burden of demonstrating that a stay of discovery is merited with respect to discovery implicating the *Monell* claims directed at Sheriff

Ard. Given the circumstances, the Court will exercise its discretion in staying all discovery with respect to Sheriff Ard until resolution of the pending Motion to Dismiss.

### 3. The Qualified Immunity Defense

Finally, the LPSO Defendants have raised the defense of qualified immunity in their Answer. (*See* R. Doc. 99 at 3). While the LPSO Defendants do not raise the qualified immunity defense in the Rule 12(c) Motion to Dismiss, Plaintiff seeks a ruling pursuant to Rule 12(f) striking the defense of qualified immunity from the LPSO Defendants' Answer. (*See* R. Doc. 105). In addition to arguing that the defense was insufficiently pled, Plaintiffs seek a ruling that qualified immunity is an invalid defense to Section 1983 claims. (*See* R. Doc. 106 at 13-20).

"The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit." *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity shields government officials from individual liability for performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Fifth Circuit has clarified that all discovery involving a defendant raising the defense of qualified immunity must be stayed until resolution of the defense of qualified immunity:

> The Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without *any* discovery.

*Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022). In *Carswell*, the Fifth Circuit concluded that a district court abused its discretion by deferring its ruling on a motion to dismiss on qualified immunity grounds and subjecting the public official defendants to discovery on the plaintiff's *Monell* claims, which created an undue burden in light of increased litigation costs and

10

complications caused by bifurcated discovery. *Id*. at 310-314. The Fifth Circuit expressly held that the required stay of discovery is not limited to claims to which the defense of qualified immunity is raised. *Id*.

In so ruling, the Fifth Circuit highlighted the Supreme Court's concerns about the burdens of litigation imposed on public officials. It also noted that these same burdens would be present if the Court allowed discovery to proceed against defendants in different capacities or against co-defendants that make no claim for qualified immunity:

> It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

*Id*. at 313 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009)). "In other words, the Court ruled out even 'minimally intrusive discovery' against official defendants before a ruling that plaintiff had met his burden to overcome the qualified immunity defense at the pleading stage." *Carswell*, 54 F.4th at 313 (quoting *Iqbal*, 556 U.S. at 686).

Consistent with *Carswell*, the undersigned has stayed all discovery where a defendant has alleged qualified immunity and there was no practical manner to allow discovery to proceed against a co-defendant that has not raised a defense of qualified immunity without prejudicing the defendants who have raised the defense of qualified immunity. *See Miller v. LeBlanc*, No. 21-353-BAJ-RLB, 2022 WL 17490971 (M.D. La. Dec. 7, 2022); *Henderson v. Bd. of Supervisors,* No. 21-297-JWD-RLB, 2022 WL 2654978 (M.D. La. July 8, 2022); *Cavalier v. La*

*Dept. of Pub. Safety & Corrections, et al.*, No. 21-656-JWD-RLB, 2022 WL 3456533 (M.D. La. Aug. 17, 2022).[1]

While the LPSO Defendants are not specifically seeking a stay of this action in light of the qualified immunity defense asserted in the Answer, Plaintiffs have put this defense at issue by filing a Rule 12(f) motion that seeks to strike the defense from the Answer. Accordingly, in addition to staying discovery in this action for the reasons raised by the LPSO Defendants, the Court will stay discovery with respect to all claims brought against the LPSO Defendants until the district judge has the opportunity to rule on whether the qualified immunity defense applies in this action. Even if such discovery is not completely foreclosed by *Carswell*, the Court finds good cause pursuant to Rule 26(c) to stay all discovery given the undue burden that such discovery would impose on the LPSO Defendants while the district judge determines whether they may proceed with their qualified immunity defenses.

## III.    Conclusion

In sum, the Court will stay **all** discovery in this action directed at the LPSO Defendants until resolution of the LPSO Defendants' Rule 12(c) Motion (R. Doc. 100) and Plaintiffs' Rule 12(f) Motion (R. Doc. 105). Given the broad range of discovery sought in Plaintiff's Motion to Compel, the Court will deny that motion without prejudice to refile a renewed motion limited to discovery directed at the foregoing claims. Any renewed motion to compel must be accompanied with a renewed Rule 37(a)(1) certificate indicating that the Plaintiff attempted to resolve the discovery dispute, in good faith, and consistent with the conclusions in this Order, prior to again seeking court intervention.

---

[1] The *Henderson* and *Cavalier* decisions relied on the now-withdrawn version of the *Carswell* opinion. *See Carswell v. Camp*, 37 F.4th 1062 (5th Cir. 2022), *opinion withdrawn and superseded on denial of reh'g,* 54 F.4th 307 (5th Cir. 2022). In support of their motion, the Moving Defendants also cite and quote the now-withdrawn version of the *Carswell* opinion. (R. Doc. 35-1 at 3).

Based on the foregoing,

**IT IS ORDERED** that the LPSO Defendants' Motion to Stay (R. Doc. 102) is **GRANTED**. Discovery directed at the LPSO Defendants is **STAYED** until resolution of the LPSO Defendants' Rule 12(c) Motion to Dismiss (R. Doc. 100) and Plaintiffs' Rule 12(f) Motion to Strike (R. Doc. 105). The parties shall inform the undersigned when the foregoing motions have been resolved.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery Responses (R. Doc. 103) is **DENIED** without prejudice to refile to the extent consistent with the body of this Order.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on May 28, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**