UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ALEXANDER CLARK

VERSUS

JEAN HOTARD, ET AL

CIVIL ACTION

NO. 22-326-JWD-RLB

RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 144) filed by Defendants City of Denham Springs; Shannon J. Womack, former Chief of Police of the City of Denham Springs, in his official capacity ("Defendant Womack"); and Officer Sydney McCullough, in her individual capacity ("Defendant McCullough") (collectively, "Denham Defendants"). Plaintiff Alexander Clark ("Plaintiff") responded by filing *Plaintiff's Response in Opposition to Defendants City of Denham Springs's, Chief Shannon Womack's and Sydney McCullough's Motion to Dismiss Pursuant to Rule 12(b)(6) & 12(c) (ECF No. 144)* (Doc. 148) ("*Pl. Response*"). The Denham Defendants then filed a *Reply Memorandum to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss* (Doc. 149) ("*Defs. Reply*"). For the reasons stated below, the Court grants in part and denies in part the Denham Defendants' *Motion to Dismiss*.

I.  BACKGROUND

   A.  Factual Background

The Court has already discussed the factual background of this matter at length in its Order and Ruling of October 1, 2024. (Doc. 136.) To reiterate, Plaintiff alleges that he was unlawfully "stopped, searched, detained, harassed, and brutalized" by "law-enforcement officers from Livingston Parish and Denham Springs." (Doc. 89 at ¶ 2.) He alleges that on May 24, 2021, two Livingston Parish Sheriff's Office ("LPSO") deputies stopped his truck without cause; searched

1

his truck and his person without a warrant or consent; took a twenty-dollar bill from his pocket; implied that the bill had drug residue on it; prevented Plaintiff from explaining where he had obtained the bill; and, when Plaintiff attempted to take the bill back from the deputies, forcibly restrained and handcuffed him with enough force to cause lasting injury. (Doc. 136 at 3 (citing Doc. 89 at ¶¶ 5–7, 42, 47, 53, 59, 66–71, 75–79, 114–127).) Plaintiff alleges that Defendant McCullough then arrived on the scene, falsely "called in a code '108' over dispatch" to indicate an officer down or in danger, and "engaged in the forceful arrest" of Plaintiff. (*Id.* (quoting Doc. 89 at ¶¶ 77–79).) Plaintiff alleges that he at no point resisted arrest and that at no point was any officer in danger. (*Id.* (citing Doc. 89 at ¶¶ 76, 78, 84–85).) Plaintiff claims that despite requesting Defendants "loosen their hold since he was in severe pain[,] [t]hey did not." (Doc. 89 at ¶ 82.) He asserts that at no point did the officers tell him that he was under arrest, why he was being arrested, or why force was being used. (Doc. 136 at 3 (citing Doc. 89 at ¶¶ 73, 79, 130).)

Plaintiff contends that he and his vehicle were again searched before he was eventually driven to the Livingston Parish Detention Center over forty minutes after he was stopped. (*Id.* at 3–4 (citing Doc. 89 at ¶¶ 88–93, 98–105).) Plaintiff asserts that it was only during this drive that he was informed of his *Miranda* rights, and only partially. (*Id.* at 4 (citing Doc. 89 at ¶ 106).) Plaintiff claims that at the Livingston Parish Detention Center, he was charged with failure to use a turn signal in violation of La. R.S. 32:104 (which was later dropped) and resisting an officer in violation of La. R.S. 14:108. (*Id.* at 4 (citing Doc. 89 at ¶¶ 110–112).) In March 2023, a charge of misdemeanor obstruction of justice in violation of La. R.S. 14:130.1 was added. (*Id.* (citing Doc. 89 at ¶ 112).) At a bench trial on May 4, 2023, Plaintiff was found guilty of the obstruction of justice charge and not guilty of the resisting an officer charge. (*Id.* (citing Doc. 89 at ¶ 112).)

2

Plaintiff alleges that he has experienced lasting injuries, which he asserts have negative impact his ability to work and enjoy his life, as a result of Defendant officers' use of force during this stop. (*Id.* (citing Doc. 89 at ¶¶ 114–25).) Plaintiff claims that after this encounter, he attempted to file a complaint with the Livingston Parish Sheriff's Office but received no follow-up, and that the Denham Springs Sheriff's Department informed him that Defendant McCullough "neither filed an incident report nor maintained any body-camera footage from the evening." (*Id.* at 5 (citing Doc. 89 at ¶¶ 128–32).)

### B. Procedural Background

Plaintiff filed his initial *Complaint* on May 19, 2022. (Doc. 1.) Both the Denham Defendants and Defendants Jason Ard, Calvin Bowden, and Jean Hotard ("Livingston Parish Defendants") moved to stay the matter pending the resolution of the criminal charges then pending against Plaintiff in state court, (Docs. 19, 22), which Plaintiff opposed, (Doc. 30). At a status conference on October 26, 2022, the Court granted the motions to stay. (Docs. 46, 47.) On a motion from Plaintiff, (Doc. 52), the stay was lifted on July 17, 2023. (Doc. 53.) Plaintiff filed his *First Amended Complaint* on December 4, 2023. (Doc. 89.)

Following initial discovery, the Livingston Parish Defendants filed a *Motion to Dismiss Pursuant to Rule 12(c)*, (Doc. 100), on January 16, 2024, which the Court granted in part and denied in part, (Doc. 136). The Court held that five of Plaintiff's claims against the Livingston Parish Defendants were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 136 at 8.) Specifically, the Court found that *Heck* barred Plaintiff's claims that he had been arrested without probable cause, falsely imprisoned, and unreasonably searched by the Livingston Parish Defendants, as well as his § 1983 and § 1985(3) claims that the Livingston Parish Defendants had denied him equal protection under the Fourteenth Amendment and conspired to do the same. (*Id.*

at 8–9.) On the other hand, the Court held that Plaintiff's claim for intentional racial discrimination under Title VI against Defendant Ard was not barred by *Heck*. (*Id.* at 10.)

The Court further held that Plaintiff failed to state a § 1983 excessive force claim or *Monell* claim for municipal liability for either excessive force or failure to investigate excessive force against Defendant Ard or the Livingston Parish Sheriff's Office. (*Id.* at 10–17.) The Court gave Plaintiff leave to amend the deficiencies in his complaint. (*Id.* at 17.) However, Plaintiff did not further amend his complaint. (*See* Doc. 143.) The Denham Defendants then filed the pending *Motion to Dismiss*. (Doc. 144.)

## II.  PARTIES' ARGUMENTS

### A.  The Denham Defendants' *Motion to Dismiss* (Doc. 144)

Although the *Motion to Dismiss* was filed by all of the Denham Defendants, it seeks to dismiss only the claims asserted against the City of Denham Springs and Defendant Womack, without addressing those asserted against Defendant McCullough. (Doc. 144-1 at 1.) The Denham Defendants argue that Count Thirteen, Plaintiff's § 1983 claim against Defendant Womack and the City of Denham Springs for conspiracy to violate civil rights, is *Heck*-barred due to Plaintiff's conviction for obstruction of justice arising out of this incident. (*Id.* at 2–3.) They contend that the Court has already ruled on this matter on October 1, 2024, and that other in-circuit courts have likewise held "that a conviction bars a claim of denial of equal protection and racial profiling." (Doc. 144-1 at 5–6 (citing *Daily v. Middleton, et al.*, No. 6:13-CV-485, 2013 WL 5353035, at *1–2 (E.D. Tex. Sep. [date], 2013); *Huynh and Nyuyen v. City of Houston, Texas, et al.*, No. H-10-1303, 2011 WL 6250792, at p. 6 (S.D. Tex. Dec. 12, 2011); as well as out-of-circuit cases *Hayden v. Pataki*, 449 F.3d 305, 314 n.8 (2d Cir. 2006); *Jackson v. Loftis*, 2006 WL 2053822, *2–3 (10th Cir. 2006)).) The Denham Defendants argue that if Plaintiff's conspiracy claims against Defendant

4

Womack and the City of Denham Springs were allowed to go forward, they "would call into question [P]laintiff's conviction, which was based on his detention and arrest." (*Id.* at 7.) Consequently, they assert, these claims are *Heck*-barred. (*Id.* at 7–8 (citing *Garig v. Travis*, No. CV 20-654-JWD-RLB, 2021 WL 2708910 (M.D. La. June 30, 2021) (deGravelles, J.)).) The Denham Defendants further assert that absent an underlying § 1983 violation, Plaintiff cannot assert a § 1983 conspiracy claim. (*Id.* at 8.)

Defendants then address Count Ten, which states a *Monell* claim against Defendant Womack. (*Id.*) They argue that this claim should be dismissed because, they assert, Plaintiff has failed to plead facts sufficient to state a claim for relief. (*Id.* at 9.) The Denham Defendants assert that Plaintiff has not pled "sufficient facts to establish the first element of an official capacity claim against Chief Womack: an 'official policy' (or custom) which caused a constitutional violation." (*Id.*) They argue that Plaintiff has not pled "sufficient facts to support any conclusion that Chief Womack or the City implemented a policy or custom of using certain dispatch calls to encourage and justify excessive force that was the moving force behind any alleged violation of [P]laintiff's constitutional rights." (*Id.* at 11.) They contend that Plaintiff has also not pled any pattern or prior instances. (*Id.*) The Denham Defendants argue that Plaintiff has not pled sufficient facts to support his allegation of a custom or practice with respect to the alleged "108" dispatch calls, nor pled sufficient facts to support any allegation that Defendant Womack either made any "108" call in this incident or acted with deliberate indifference in this incident. (*Id.* at 12–13.) They likewise assert that Plaintiff has not alleged facts establishing a pattern of violations to support an allegation that Defendant Womack "was deliberately indifferent to alleged improper acts by his subordinate officers." (*Id.* at 13.)

5

Similarly, the Denham Defendants argue that Plaintiff "cannot show that there is an independent cause of action for inadequate investigation or discipline policies[,]" or that Defendant Womack had in place any "inadequate investigation or disciplinary policies" that led to a violation of Plaintiff's rights. (*Id.*) They further argue that Plaintiff has not alleged any failure to investigate or discipline officer misconduct on the part of Defendant Womack, let alone any pattern, policy, or custom. (*Id.* at 14.) Defendants further argue that Plaintiff's claims that Defendant Womack's "allegedly inadequate policies on investigation and disciplining of police misconduct resulted in an excessive use of force against him[]" are "fatally attenuated[.]" (*Id.*) Instead, they argue, "Plaintiff has failed to allege any facts establishing direct causation of the alleged constitutional violation of which he complains." (*Id.* at 15.) The Denham Defendants argue that Plaintiff has failed to plead facts showing a pattern of abuses sufficient to establish municipal liability on behalf of Defendant Womack and thus urge the Court to dismiss this claim. (*Id.* at 16.)

The Denham Defendants do not address Counts Four or Seven, which state § 1983 claims against Defendant McCullough.

**B.    *Pl. Response* (Doc. 148)**

Plaintiff argues that in order to plead a § 1983 conspiracy claim against the Denham Defendants, his "conspiracy claim needs only to contain 'sufficient factual matter, accepted as true,' of '(1) an actual violation of a right protected under § 1983, and (2) actions taken in concert by defendants with the specific intent to violate that right' that is 'plausible on its face.'" (Doc. 148 at 12–13 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); quoting *Castellano v. Fragozo*, 311 F.3d 689, 703 (5th Cir. 2002*), rev'd on other grounds*, 352 F.3d 939 (5th Cir. 2003)).) Plaintiff asserts that he has identified a violation of a constitutional right—"his right, and the rights of Black motorists in Denham Springs to be free from seizure through the

6

use of excessive force." (*Id.* at 13.) He argues that the Denham Defendants "conspired to violate Plaintiff's equal protection rights through their support" of the Livingston Parish Sheriff Department's alleged policy of targeting a predominantly Black neighborhood for race-based over-policing, relying on statistical analysis to allege disproportional stops of Black motorists. (*Id.*) Plaintiff alleges that when Livingston Parish Sheriff's deputies detained him through the use of excessive force, Defendant McCullough likewise employed excessive force against him. (*Id.* at 14.)

Plaintiff further argues that he has pled sufficient facts to allege a conspiracy between the Denham Defendants and the Livingston Parish Sheriff's Office "to harass and violate the rights of Black motorists in Denham Springs, Louisiana, including through the use of excessive force." (*Id.*) He asserts that the Court's dismissal of Count Thirteen against the Livingston Parish Sheriff's Office Defendants "does not invalidate the claim against" the Denham Defendants. (*Id.*) Instead, he argues, he has alleged sufficient facts against Defendant McCullough and the City of Denham Springs through the Denham Springs Police Department's coordination with the Livingston Parish Sheriff's Office to state a claim for conspiracy to violate civil rights. (*Id.* at 15–16.) Plaintiff further argues that he has pled sufficient facts to state a § 1985 conspiracy claim against the Denham Defendants. (*Id.* at 16.) Plaintiff argues that his conspiracy claim is not *Heck*-barred because "it is temporally and conceptually distinct from the factual basis for his conviction of obstruction of justice[,]" contending that "[a]n excessive force claim is temporally and conceptually distinct from an obstruction of justice conviction if the force at issue was used after the obstructive act occurred." (*Id.* at 16–17 (citing *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).) Plaintiff argues that by the time that Defendant McCullough, the first Denham Defendant, arrived at his encounter with law enforcement on May 24, 2021, he was already "being handcuffed for the actions that met the

7

elements of obstruction of justice." (*Id.* at 18.) Plaintiff therefore argues that his claim that the Denham Defendants "conspired to violate his equal protection rights through the racially discriminatory use of excessive force against Black motorists is 'temporally and conceptually distinct' from his obstruction of justice conviction." (*Id.* (quoting *Bush*, 513 F.3d at 498).)

Plaintiff further asserts that the Denham Defendants misapply *Heck* to broadly bar all civil suits for conspiracies to violate civil rights by law enforcement officers "if *any* criminal conviction results from the encounter." (*Id.* at 20–21.) Plaintiff argues that because his only conviction was for obstruction of justice, this should not shield the Denham Defendants from liability, particularly not at the motion to dismiss stage. (*Id.* at 21–22.)

Plaintiff states in a footnote that he "does not oppose the dismissal of Count Ten from the First Amended Complaint[,]" which is the *Monell* claim against Defendant Womack. (*Id.* at 6 n.1.)

### C. *Defs. Reply* (Doc. 149)

The Denham Defendants reply that Plaintiff "attempts to merge two separate claims: 1) his claim for conspiracy to violate his right to equal protection and 2) his claim for excessive force . . . in an attempt to escape the *Heck* bar of his conspiracy claim." (Doc. 149 at 1.) They argue that the Court's previous ruling of October 1, 2024, explicitly bars Plaintiff from pursuing his conspiracy claim pursuant to *Heck*. (*Id.* at 2 (citing Doc. 136 at 9–10).) They assert that Plaintiff failed to name Defendant McCullough in his *First Amended Complaint* as part of the alleged conspiracy, and that he now "attempts to conflate" Defendant McCullough's actions of allegedly using excessive force with those of Defendant Womack and the City of Denham Springs of allegedly conspiring to violate equal protection to create one broad claim for conspiracy. (*Id.* at 3.) The Denham Defendants argue that Plaintiff cannot simply transform his claims in his opposition pleading in an attempt to avoid the *Heck* bar. (*Id.*)

8

In addition, the Denham Defendants point to the nature of conspiracy law in imposing liability on all defendants for acts committed by any conspirator. (*Id.*) They argue that "[t]he Court has already held that [P]laintiff's claims alleging a conspiracy to violate his right to equal protection against two of the conspirators (Hotard and Ard) would imply the invalidity of his conviction and is barred by *Heck*." (*Id.*) Accordingly, they assert, this means that a conspiracy claim against the Denham Defendants as the remaining co-conspirators is likewise *Heck*-barred as implying the invalidity of Plaintiff's conviction. (*Id.* at 3–4.) The Denham Defendants contend that the same arguments would apply to Defendant McCullough if the Court were to accept Plaintiff's assertion that the use of excessive force and conspiracy to violate equal protection are intertwined—raising, for the first time, arguments as to the claims against Defendant McCullough. (*Id.* at 4.)

### III.  LEGAL STANDARDS

#### A.  Motion to Dismiss

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the

9

light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using

10

permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

**B.     *Heck* Bar**

"In *Heck*, the Supreme Court held that a plaintiff who has been convicted of a crime cannot bring a § 1983 claim challenging the constitutionality of his conviction unless that conviction has been reversed, expunged, declared invalid, or called into question by federal habeas corpus." *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (per curiam) (citing *Heck*, 512 U.S. at 486–87). "*Heck* teaches that in a § 1983 action, if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Cano v. Bexar Cnty., Texas*, 280 F. App'x 404, 408 (5th Cir. 2008) (per curiam) (quoting *Heck*, 512 U.S. at 487).

The Fifth Circuit has "applied *Heck* to bar claims for excessive force, false arrest, malicious prosecution, and other claims of unlawful seizure." *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 F. App'x 578, 583 (5th Cir. 2012) (per curiam) (citing *Connors v. Graves*, 538 F.3d 373, 377–78 (5th Cir. 2008) (excessive force and unlawful seizure); *Wells v. Bonner*, 45 F.3d 90, 94–96 (5th Cir. 1995) (malicious prosecution and false arrest)).

In addition, the Fifth Circuit has repeatedly applied *Heck* to § 1985 claims. *See, e.g.*, *Claunch v. Williams*, 508 F. App'x 358, 359 (5th Cir. 2013) (per curiam); *Haynes v. Lee*, 2024 U.S. App. LEXIS 25602 at *3–4 (5th Cir. Oct. 10, 2024) (per curiam); *Stephenson v. Reno*, 28 F.3d 26, 27–28 (5th Cir. 1994) (applying *Heck* to a *Bivens* action). Other circuits have likewise applied *Heck* to § 1985 claims. *See, e.g.*, *Amaker v. Weiner*, 179 F.3d 48, 51 (2nd Cir. 1999); *Lanier v.*

*Bryant*, 332 F.3d 999, 1005–06 (6th Cir. 2003); *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004).

## IV. ANALYSIS

The Denham Defendants do not advance any arguments that move to dismiss Counts Four or Seven against Defendant McCullough. Accordingly, the Court does not address those Counts.

Plaintiff does not oppose the dismissal of Count Ten against Defendant Womack. (Doc. 148 at 6 n.1.) Accordingly, the Court will grant the Defendants' *Motion to Dismiss* on that count.

Remaining, then, is the Denham Defendants' *Motion to Dismiss* with respect to Count Thirteen of the *First Amended Complaint*, alleging § 1985(3) and § 1983 conspiracy claims against Defendants Womack and the City of Denham Springs.

"Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983). A § 1983 claim requires that a plaintiff "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

"Conspiracy claims asserted under § 1983 require plaintiffs to prove '(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'" *Bevill v. Wheeler*, 103 F.4th 363, 374 (5th Cir. 2024) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 280 (5th Cir. 2023) (internal quotations omitted)). Likewise, "Section 1985(3) imposes liability on 'two or more persons in any State or Territory

[who] conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws.'" *Konan v. United States Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024) (quoting 42 U.S.C. § 1985(3)). "'To state a claim under . . . § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020) (quoting *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994)).

Even where a plaintiff sufficiently alleges a § 1983 or § 1985 claim, the defendants may be protected by qualified immunity. *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020); *see Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). Qualified immunity serves to "protect[] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It provides "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In determining whether qualified immunity is appropriate, courts apply a two-prong test asking whether the plaintiff has demonstrated "a violation of a constitutional right" and whether "the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. This two-prong test need not be sequential. *Id.* at 236.

In a claim implicating qualified immunity, "the complaint 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [] alleged and that defeat a qualified immunity defense with equal specificity.'" *Allen*, 65 F.4th at

13

743 (quoting *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)). The factual standard is still "the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Id.* (quoting *Arnold*, 979 F.3d at 267). For each claim, then, a plaintiff must plead specific facts to (1) allege a violation of a constitutional right by a person acting under the color of state law and (2) demonstrate that the right was clearly established at the time of the defendant's misconduct.

As a preliminary matter, Plaintiff argues that in asserting a violation of a constitutional right, he asserts not only his right, but also "the rights of Black motorists in Denham Springs to be free from seizure through the use of excessive force." (Doc. 148 at 13.) However, Plaintiff sues only on behalf of himself. He has not certified a class nor sought to do so. As such, the Court will consider only the claims Plaintiff brings on his own behalf.

In Count Thirteen, Plaintiff alleges that Defendants Womack and the City of Denham Springs conspired to target Plaintiff on account of his race by instituting, ratifying, and failing to rectify policies that led to his stop, search, and seizure. (Doc. 89 at ¶¶ 326, 329–30.) In addition, he alleges that they conspired with the LPSO to coordinate "racially motivated over-policing of the predominantly Black Neighborhood." (*Id.* at ¶ 334.)

To the extent Plaintiff alleges a conspiracy between Defendants Womack and the City of Denham Springs to set internal Denham Springs Police policies, his claims are barred by the intracorporate-conspiracy doctrine. This "precludes plaintiffs from bringing conspiracy claims [] against multiple defendants employed by the same governmental entity." *Konan*, 96 F.4th at 805 (quotations omitted). The Fifth Circuit noted that it has "consistently held that an agency and its employees are a 'single entity which is incapable of conspiring with itself.'" *Id.* (quoting *Thornton v. Merchant*, 526 F. App'x 385, 388 (5th Cir. 2013); *see also Tex. Democratic Party v. Abbott*, 961

14

F.3d 389, 410 (5th Cir. 2020)). This is also true to the extent that Plaintiff alleges a conspiracy between Defendants Womack, the City of Denham Springs, and McCullough.

On the other hand, to the extent Plaintiff alleges a conspiracy between the Denham Defendants and the Livingston Parish Defendants, he claims that the Denham Defendants "target[ed] the predominantly Black Neighborhood for over-policing based on race[;]" that both the Denham Defendants and the Livingston Parish Defendants "create[d] an environment in which over policing leads to the use of tactics such as swarming, justifying increased violence against Black citizens, failing to investigate or hold accountable subordinates, and the overt acts on May 24, 2021[;]" and that they "frequently coordinate their policing efforts . . . including on the above-described racially motivated over-policing of the predominantly Black Neighborhood." (Doc. 89 at ¶¶ 329, 331, 334.) These allegations put at issue Plaintiff's stop, search, and seizure— not the alleged use of excessive force by Defendant McCullough. It is this alleged use of force by Defendant McCullough that leads to Plaintiff's argument that there is a temporal separation from the events that led to his obstruction of justice conviction, potentially bypassing a *Heck*-bar. (Doc. 148 at 18.) However, this use of force is in no way mentioned in Plaintiff's § 1985(3) and § 1983 conspiracy claim. (Doc. 89 at ¶¶ 325–36.) These claims focus on only on the alleged over-policing and racial bias leading to Plaintiff's stop, search, and seizure. (*Id.*) As the Court held in its previous Order, the Fifth Circuit has indicated that equal protection claims that undermine the validity of a plaintiff's criminal conviction are barred by *Heck*. (Doc. 136 at 9 (citing *Guerrero v. Travis Cnty.*, 507 F. App'x 329, 329 (5th Cir. 2013) (per curiam); *Kimble v. Jefferson Par. Sheriff's Off.*, No. 22-30078, 2023 U.S. App. LEXIS 2991 at *8 n.6, 2023 WL 179376 at *3 n.6 (5th Cir. Feb. 7, 2023) (citing *Heck*, 512 U.S. at 486–87; *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)).) Plaintiff argues that the policies and tactics used by the defendant law enforcement agencies were in fact

15

"racially motivated over-policing" that intentionally targeted him on account of his race. (Doc. 89 at ¶ 334.) This undermines the stop, search, and seizure that led to his obstruction of justice conviction. Until or unless Plaintiff's obstruction of justice conviction is vacated or overturned, his § 1983 and § 1985(3) conspiracy claims are barred by *Heck*.

## V.  CONCLUSION

Accordingly,

The *Motion to Dismiss* (Doc. 144) filed by Defendants City of Denham Springs, Shannon J. Womack, and Sydney McCullough is **GRANTED** in part and **DENIED** in part. The *Motion to Dismiss* is **GRANTED** with respect to Counts Ten and Thirteen of Plaintiff Alexander Clark's *First Amended Complaint* (Doc. 89). Plaintiff's Counts Ten and Thirteen are **DISMISSED WITHOUT PREJUDICE**, with leave to refile if Plaintiff's conviction is reversed, expunged, or otherwise declared invalid or called into question by federal habeas corpus. *See Cook v. City of Tyler*, 974 F.3d 537, 539–40 (5th Cir. 2020). The *Motion to Dismiss* is **DENIED** with respect to Counts Four and Seven of Plaintiff's *First Amended Complaint*. The Denham Defendants raised no arguments as to Counts Four and Seven against Defendant McCullough; these claims survive.

Signed in Baton Rouge, Louisiana, on <u>June 25, 2025</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**