**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

Alexander Clark,

Plaintiff,

vs.

Deputy Jean Hotard, et al,

Defendants.

Case No. 3:22-CV-00326-JWD-RLB

JUDGE JOHN W. DEGRAVELLES

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF C. SCOTT COURREGE**

**Table of Contents**


**I. INTRODUCTION** ........ 1

**II. BACKGROUND** ........ 1

**III. LEGAL STANDARD** ........ 2

**IV. ARGUMENT** ........ 3

A. Mr. Courrege's Opinion with Respect to Dr. Sarah Abraham's Statistical Findings Are Outside the Scope of His Expertise ........ 3

B. Mr. Courrege's Opinion About the Causation of the Injuries Sustained by Mr. Clark Is Outside the Scope of His Expertise ........ 7

C. Mr. Courrege's Opinion on the Dashcam Video Is Lay and Concludes on Witness Credibility ........ 8

D. Mr. Courrege's Analysis of the *Graham* Factors Draws Impermissible Legal Conclusions ........ 11

E. Mr. Courrege's Opinions About the Alleged Unlawfulness of Mr. Clark's Actions During the Incident Are Irrelevant Legal Conclusions ........ 14

F. Mr. Courrege's Other Opinions Do Not Bear on Any Live Claim in the Case and Will Only Serve to Confuse the Trier of Fact ........ 15

**V. CONCLUSION** ........ 16

# Table of Authorities

## Cases

*Albert v. City of Petal*,
819 F. App'x 200 (5th Cir. 2020) (per curium) .......... 11

*Ambler v. Nissen*,
No. 1:20-CV-1068-LY, 2023 WL 4612016 (W.D. Tex. July 18, 2023). .......... 7, 8

*Amin-Akbari v. City of Austin, Tex.*,
52 F. Supp. 3d 830 (W.D. Tex. 2014).......... 11

*Bailey v. Ramos*,
No. SA-20-CV-00466-XR, 2022 WL 17658641
(W.D. Tex. Nov. 21, 2022) .......... 12

*Baxter v. Anderson*,
No. CV 16-142-JWD-RLB, 2017 WL 8944175 (M.D. La. Oct. 4, 2017)
(DeGravelles, J.) .......... 7

*Becker v. City of Evansville*,
No. 312CV00182TWPMPB, 2016 WL 6395868 (S.D. Ind. Oct. 28, 2016) .......... 14

*Bibbins v. City of Baton Rouge*,
489 F. Supp. 2d 562 (M.D. La. 2007)..........6

*Bodzin v. City of Dallas*,
768 F.2d 722 (5th Cir. 1985) .......... 11

*Brown v. Strain*,
No. CIV.A. 09-2813, 2010 WL 3523026 (E.D. La. Aug. 31, 2010) .......... 6, 13

*Carlson v. Bioremedi Therapeutic Sys., Inc.*,
822 F.3d 194 (5th Cir. 2016) .......... 4, 7

*Castro v. Wal-Mart Real Estate Business Trust*,
645 F. Supp. 3d 638 (W.D. Tex. 2022)..........9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993).......... 1, 2

*Deville v. Marcantel*,
567 F.3d 156 (5th Cir. 2009) .......... 11

*Dold v. Snohomish Cnty.*,
No. 2:20-CV-00383-JHC, 2023 WL 123335 (W.D. Wash. Jan. 5, 2023).......... 13

*Donastorg v. City of Ontario*,
No. EDCV 18-992JGB (SPX), 2021 WL 4051170
(C.D. Cal. June 4, 2021) .......... 14

*Douglas v. Chem Carriers Towing, LLC*,
431 F. Supp. 3d 830, 835 (E.D. La. 2019) .......... 9

*Dudas v. Engel*,
No. 1:19 CV 2565, 2021 WL 2000579 (N.D. Ohio May 17, 2021) .......... 14

*Equal Emp. Opportunity Comm'n v. S&B Indus., Inc.*,
No. 3:15-CV-0641-D, 2017 WL 345641 (N.D. Tex. Jan. 24, 2017) .......... 6

*Fetty v. City of Baton Rouge*,
518 F. Supp. 3d 923 (M.D. La. 2021) .......... 12

*Gage v. Jenkins*,
No. CV 13-0638-SDD-EWD, 2017 WL 2190064
(M.D. La. May 18, 2017) .......... 16

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 6

*Goode v. City of Southaven*,
No. 3:17-CV-60-DMB-RP, 2018 WL 4691330
(N.D. Miss. Sept. 27, 2018) .......... 7

*Graham v. Connor,*
490 U.S. 386 (1989) .......... 11

*Hagan v. Jackson Cnty., Mississippi*,
No. 1:13CV268-HSO-RHW, 2016 WL 1091107
(S.D. Miss. Mar. 21, 2016) .......... 10

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) .......... 6

*Howard v. Dir.*,
TDCJ-CID, No. 1:13-CV-256, 2019 WL 4573640
(E.D. Tex. Sept. 20, 2019) .......... 15

*In the Matter of M&M Wireline & Offshore Servs., LLC*,
No. CV 15-4999, 2016 WL 4681196 (E.D. La. Sept. 7, 2016) .......... 7

*Joseph v. Doe*,
No. CV 17-5051, 2021 WL 2313475 (E.D. La. June 7, 2021) .......... 12

*Johnson v. Arkema, Inc.*,
685 F.3d 452, 459 (5th Cir. 2012) ....................2

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).................... 2, 3

*Lamar Advert. Co. v. Zurich Am. Ins. Co.*,
533 F. Supp. 3d 332 (M.D. La. 2021) (DeGravelles, J.) .................... 11

*Manton v. Strain*,
No. CIV.A. 09-0339, 2010 WL 4364480 (E.D. La. Oct. 21, 2010) .................... 11

*McBroom v. Payne*,
478 F. Appx 196 (5th Cir. 2012).................... 10

*Meganathan v. Signal Int'l L.L.C.*,
No. 1:13-CV-497, 2015 WL 11109846 (E.D. Tex. June 26, 2015) .................... 14, 15

*O'Hara, v. Lott*,
No. 4:23CV442 HEA, 2025 WL 2549231 (E.D. Mo. Sept. 4, 2025).................... 13

*Owen v. Kerr-McGee Corp.*,
698 F.2d 236 (5th Cir. 1983) .................... 11

*Paz v. Brush Eng'red Materials, Inc.*,
555 F.3d 383 (5th Cir. 2009) .................... 6

*Perez v. City of Austin,*
No. A-07-CA-044 AWA, 2008 WL 1990670 (W.D. Tex. May 5, 2008).................... 8

*Pipitone v. Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) .................... 2

*Rushing v. Yeargain*,
No. CV 19-653-JWD-SDJ, 2022 WL 2663851 (M.D. La. July 11, 2022)
(DeGravelles, J.) .................... 4, 5

*State of Louisiana v. Byron Franklin*,
24-502, 2024 WL 4875633 (La. App. 5 Cir. 11/22/24).................... 12

*Thomas v. City of Monroe*,
No. 97–30695, 1998 WL 611550 (5th Cir. Aug. 19, 1998).................... 4

*Trexler v. City of Belvidere*,
No. 3:20-CV-50113, 2023 WL 415184 (N.D. Ill. Jan. 25, 2023).................... 13

*United States v. Jones*,
37 F.3d 633 (5th Cir. 1994) .................... 3

*United States v. Milton*,
555 F.2d 1198 (5th Cir. 1977) .......... 3

*Williams v. City of Houston, Tex.*,
No. H-16-3342, 2019 WL 2435854 (S.D. Tex. June 11, 2019).......... 10

**Other Authorities**

Pattern Jury Instructions (Civil Cases), Fifth Circuit (rev. 2020).......... 16

**Rules**

Fed. R. Evid. 403 .......... passim

Fed. R. Evid. 702 .......... passim

Fed. R. Evid. 704 .......... passim

## I. INTRODUCTION

Plaintiff Alexander Clark seeks to exclude certain testimony of C. Scott Courrege, proffered as an expert in police practices by Defendants Jean Hotard, Calvin Bowden, Sheriff Jason Ard, City of Dedham Springs, former Chief J. Shannon Womack, and Syndey McCullough (collectively "Defendants"), based on Federal Rules of Evidence 702, 704, 403, and as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Mr. Courrege opines outside the bounds of his purported expertise in police practices, bases certain opinions on conjecture instead of on sufficient facts or data, provides lay opinions unhelpful to the trier of fact by opining on video evidence, asserts impermissible legal conclusions and credibility determinations, and proffers irrelevant opinions not tied to any live claim in the case. For these reasons, certain of Mr. Courrege's opinions should be excluded.

## II. BACKGROUND

Plaintiff Alexander Clark brought suit against Defendants after he was detained, harassed, injured, and arrested by officers from the Livingston Parish Sheriff's Office, which left him humiliated and in severe pain from torn ligaments and fractured bones. In his First Amended Complaint ("FAC"), Mr. Clark asserts claims against Defendants for Excessive Force, Negligence in Handcuffing, and Title VI Intentional Race Discrimination.[1] ECF No. 89. Mr. Clark submitted three expert reports on June 18, 2025, including one from Dr. Sarah Abraham, PhD, an expert in statistics. *See* Ex. A, Report of Dr. Sarah Abraham. Defendants submitted Mr. Courrege's report on July 8, 2025. *See* Ex. B, Report of C. Scott Courrege. On August 25, this

---

[1] Mr. Clark's other claims were dismissed by this Court on October 1, 2024 and on June 25, 2025. *See* ECF Nos. 136, 160.

Court granted the parties' joint motion to extend the dispositive motion and *Daubert* deadline to September 29, 2025. *See* ECF No. 163.

## III. LEGAL STANDARD

Federal Rule of Evidence ("FRE") 702 provides:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony bears the burden of establishing the reliability of the expert's testimony by a preponderance of the evidence. *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). Parties may challenge whether another party has met their burden under FRE 702 under the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). A *Daubert* challenge determines whether expert testimony is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591 and Fed. R. Evid. 702). To be reliable, the "expert opinion [must] be grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief." *Johnson*, 685 F.3d at 459 (quoting *Curtis v. M & S Petroleum, Inc.* 174 F.3d 661, 668 (5th Cir. 1999)). The *Daubert* inquiry is a "flexible" test that grants district courts "broad latitude" to exclude expert testimony. *Kumho Tire*, 526 U.S. at 141–42. Through conducting

*Daubert* analysis, district courts act as important gatekeepers to ensure that a proffered expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. Though Rule 704 no longer prohibits testimony about ultimate issues of fact, "courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *United States v. Milton,* 555 F.2d 1198, 1203 (5th Cir. 1977). And even relevant testimony may be excluded if its probative value is substantially outweighed by, *inter alia*, the danger of unfair prejudice or misleading the jury. *See United States v. Jones*, 37 F.3d 633 (5th Cir. 1994) (citing Fed. R. Evid. 403).

## IV. ARGUMENT

Mr. Courrege's testimony should be limited because it fails to meet the standard of the Federal Rules of Evidence 702, 704, and 403. He offers opinions outside the scope of his expertise as a police practices expert, fails to base his opinions in fact, fails to substantiate certain opinions with reliable methods, asserts impermissible legal conclusions and credibility determinations, and offers irrelevant testimony unmoored from any live issue in the litigation.

### A. Mr. Courrege's Opinion with Respect to Dr. Sarah Abraham's Statistical Findings Is Outside the Scope of His Expertise

Mr. Courrege impermissibly opines on the reliability of the opinion of Plaintiff's expert, Dr. Sarah Abraham, with respect to her statistical analysis of LPSO traffic enforcement. Dr. Abraham analyzed data from traffic stops and police reports issued by LPSO deputies from 2020–2021 and concluded that LPSO conducted traffic stops and issued police reports to Black people at a statistically-significant disproportionate rate compared to their population in the Parish. *See* Ex. A at 2. In response to Dr. Abraham's statistical findings, Mr. Courrege states: (1) Dr. Abraham did not analyze sufficient data to support her findings; and (2) "Ms. [sic]

Abraham's analysis fails to account for the broader operational context of the data." Ex. B at 8. These opinions are inadmissible under FRE 702(a)–(c) as they are outside of Mr. Courrege's expertise, lack a sufficient factual basis, and fail to utilize a reliable methodology.

As an initial matter, Mr. Courrege's opinion must be excluded because he is not qualified to testify in the field of statistics or data analysis. *See* Fed. R. Evid. 702(a); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999)) ("An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'"). Mr. Courrege acknowledged at his deposition that he is not an expert in statistics. *See* Ex. C, Deposition of C. Scott Courrege at 19:21–23. In fact, he does not know how to conduct statistical analyses or what it means for something to be statistically significant. *Id.* at 71:18–24. Additionally, Mr. Courrege is not an expert in identifying racially discriminatory practices, nor has he done that work in his law enforcement practice. *Id.* at 19:8–15, 20:2–4, 47:19–52:25, 55:15–58:2, 59:8–61:22 (describing his limited experience evaluating racial discrimination as a law enforcement supervisor and how complaints would be passed off to Internal Affairs "if there were any signs of wrongdoing"). Yet Mr. Courrege challenges Dr. Abraham's robust statistical analysis by arguing that he does not believe there is sufficient data showing racial discrimination, and that the data is missing context. *Id.* at 43:8–10, 13–14. Testimony beyond the scope of a proffered expert's expertise can and should be excluded from evidence. *See Rushing v. Yeargain*, No. CV 19-653-JWD-SDJ, 2022 WL 2663851, at *7 (M.D. La. July 11, 2022) (DeGravelles, J.) (excluding portions of expert testimony where a proffered expert engaged in opinions outside the boundaries of his expertise); *see also Thomas v. City of Monroe*, No. 97–30695, 1998 WL 611550, at *5 (5th Cir. Aug. 19, 1998) (affirming exclusion of police practices expert's

testimony where the expert testified "he had not dealt in [the subject areas] very often, he did not instruct people in those areas, and he had no special training in those areas"). As the reliability of statistical analysis and identification of racially discriminatory practices is "beyond [Mr. Courrege's] area of expertise" as a proffered police practices, training, and use of force expert, Mr. Courrege's opinions responding to Dr. Abraham's statistical findings should be excluded. *Rushing,* 2022 WL 2663851, at *7.

Even if Mr. Courrege were qualified to opine on statistics, which he is not, his statistical opinions fail because they lack a sufficient factual foundation. *See* Fed. R. Evid. 702(b). Here, Mr. Courrege's opinion that Dr. Abraham did not analyze a "sufficient" data set is not based on any—much less sufficient—facts or data. Mr. Courrege did not analyze the underlying data or Dr. Abraham's calculations. Ex. C at 64:18–65:1; 72:11–13. When asked how he would cure Dr. Abraham's analysis, Mr. Courrege could not identify what potential dataset would be sufficient. *Id.* at 46:6–19. Mr. Courrege asserted that Dr. Abraham's data "didn't account for all the stop and releases, [and] the warnings," but then admitted he did not know whether such data even exists. *Id.* at 66:15–25; 71:25–72:3.

Likewise, Mr. Courrege's theory that Dr. Abraham's opinions "lack context" is not based in any facts or data, and therefore must also be excluded under FRE 702(b). Mr. Courrege opines that Dr. Abraham's report fails to "consider the division's mandate, deployment strategies, or whether patrols were focused in certain areas due to crime trends or citizen-reported concerns." Ex. B at 8. But this opinion does not correspond with any evidence produced in discovery in this case. At his deposition, Mr. Courrege conceded he did not know whether LPSO received any specific citizen complaints, adopted any crime strategies in response to crime trends, or worked on a particular operation that would explain Dr. Abraham's findings. *See* Ex. C at 46:13–18;

83:8–13. These imagined excuses—little more than a "furtive inclusion of a number of supposed facts not in the record"—are the quintessential type of opinions FRE 702(b) is designed to exclude. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *see also Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388–89 (5th Cir. 2009) (affirming exclusion of expert where the expert's analysis was "unreliable because [the expert] had based it on a false assumption"); *Brown v. Strain*, No. CIV.A. 09-2813, 2010 WL 3523026, at *1 (E.D. La. Aug. 31, 2010) (excluding portion of police practices expert's testimony where it was "speculative"); *Equal Emp. Opportunity Comm'n v. S&B Indus., Inc.*, No. 3:15-CV-0641-D, 2017 WL 345641, at *4 (N.D. Tex. Jan. 24, 2017) (excluding expert's testimony where the proffering party "failed to point to any direct or circumstantial evidence" that supported the expert's speculation that something "may have" occurred).

Additionally, Mr. Courrege's opinions regarding the sufficiency and context of Dr. Abraham's data are not tethered to any methodology. Expert testimony must be the "product of reliable principles and methods." Fed. R. Evid. 702(c). Proffered experts must establish they used reliable methods because "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Here, Mr. Courrege did not use *any* principle or methodology to arrive at his rebuttal opinions of Dr. Abraham's report. *See* Ex. B at 8; Ex. C at 64:18–65:1; 72:11–13 (admitting he did not analyze Dr. Abraham's data or calculations). The failure of an expert to use methodology to assert statistical opinions is grounds to exclude those opinions under FRE 702(c). *See Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 571 (M.D. La. 2007) (excluding police expert's testimony where he

did not "explain the methodology used in arriving at his probability conclusion" nor was it apparent that "he performed any statistical tests or calculations").

**B. Mr. Courrege's Opinion about the Causation of Mr. Clark's Injuries Is Outside the Scope of His Expertise**

As he did in providing statistical opinions purporting to rebut Dr. Abraham, Mr. Courrege ventures outside of his expertise to offer unfounded opinions regarding medical causation of Mr. Clark's handcuffing injury in contravention of FRE 702(a). The Fifth Circuit has plainly held that "a non-physician is not qualified to give medical testimony." *Carlson*, 822 F.3d at 200 (citing *Edmonds v. Ill. Cent. Gulf R.R.,* 910 F.2d 1284, 1286–87 (5th Cir. 1990)). Police practices experts impermissibly opine about medical causation where they testify to the interaction between the use-of-force and medical conditions. *See Ambler v. Nissen*, No. 1:20-CV-1068-LY, 2023 WL 4612016, at *4–5 (W.D. Tex. July 18, 2023).

Mr. Courrege opines that Mr. Clark's "injury sustained in this stage of the handcuffing technique is not ordinary." Ex. B at 18. This is precisely the type of medical opinion courts routinely exclude non-medical experts from providing, as Mr. Courrege is not qualified to opine on injuries sustained at any stage of handcuffing. *See, e.g.*, *Baxter v. Anderson*, No. CV 16-142-JWD-RLB, 2017 WL 8944175, at *4 (M.D. La. Oct. 4, 2017) (DeGravelles, J.) (limiting non-medical expert's testimony where he asserted that "the probability of injury in this instance was very low"); *In the Matter of M&M Wireline & Offshore Servs., LLC*, No. CV 15-4999, 2016 WL 4681196, at *8 (E.D. La. Sept. 7, 2016) (limiting expert testimony where a non-medical expert opined that the plaintiff's injuries "appear somewhat questionable"). Mr. Courrege even admits that the cause of Mr. Clark's handcuffing injury is "beyond the scope of my expertise." Ex. B at 18; *see* Ex. C at 19:16–20; 152:24 (deposition testimony confirming the same). As he "indisputably lacks expertise in medicine," the Court should reject Mr. Courrege's blatant

attempt to cast doubt on the causation of Mr. Clark's injuries. *Goode v. City of Southaven*, No. 3:17-CV-60-DMB-RP, 2018 WL 4691330, at *5 (N.D. Miss. Sept. 27, 2018) (excluding police practices expert's testimony regarding medical causation); *see also Perez v. City of Austin,* No. A-07-CA-044 AWA, 2008 WL 1990670, at *6 (W.D. Tex. May 5, 2008) (excluding police practice expert's testimony where he testified "outside the scope of [his] expertise in police practices" by opining about a psychological evaluation of the plaintiff).

Furthermore, Mr. Courrege's medical testimony is based on a counter-factual strawman. Mr. Courrege frames Mr. Clark's injury as occurring due to the handcuffing techniques of Defendants, Ex. C at 150:16–17 ("[I]n my experience with these handcuffing techniques, that [injury is] not common."), when, at his deposition, Mr. Clark explicitly stated that his injury occurred "from [Defendants] grabbing, trying to handle me," not because the handcuffs were too tight. Ex. F, Deposition of Alexander Clark at 71:18–72:7, 73:18-75:1. This opinion is based on an inaccurate description of the facts in this case and should therefore be excluded because it is irrelevant.

### C. Mr. Courrege's Opinions on The Dashcam Video Are Lay and Conclude on Witness Credibility

Mr. Courrege analyzes the police dashcam videos of the incident to deliver his own narrative as to what occurred on May 24, 2021 and then to opine: (1) the dashcam video contradicts Mr. Clark's claim that he did not resist an officer; and (2) the dashcam video contradicts Mr. Clark's claim that he felt pressure on his neck[2] by Defendant McCullough. Ex. B at 10, 12–13, 17. These opinions must be excluded first under FRE 702(a) because "the content

[2] Mr. Courrege claims that Mr. Clark alleged Defendant McCullough "choked" him. Ex. B at 17. However, Mr. Clark pled that Defendant McCullough "applied pressure" to his neck, not that he was choked. *See* ECF No. 89 ¶¶ 79, 126, 132, 225, 256. Mr. Courrege's opinion that Mr. Clark "was not choked" is a strawman rebuttal and should be excluded.

of the videos is within a factfinder's lay knowledge and therefore does not require specialized knowledge, training, or education." *Ambler*, 2023 WL 4612016, at *5 (citing *Anderson v. City of McComb, Miss.*, 539 F. App'x 385, 388 (5th Cir. 2013)). They should also be excluded under FRE 704 and 403 because these opinions represent impermissible credibility determinations reserved for the trier of fact. *See Day v. Baton Rouge City Police*, No. CV 17-328-EWD, 2020 WL 7024478, at *5 (M.D. La. Nov. 30, 2020) (excluding police practices expert testimony that "artificially bolsters and potentially elevates Defendants' version without any apparent basis for such enhanced credibility"). "[A] judge assessing a proffer of expert [] testimony under Rule 702 should also be mindful of other applicable rules," especially FRE 403, "which permits a court to 'exclude relevant evidence if its probative value is substantially outweighed by a danger of' among other things, 'confusing the issues' or 'misleading the jury.'" *Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 835 (E.D. La. 2019) (quoting *Daubert*, 509 U.S. at 595 and Fed. R. Evid. 403). "'[E]xpert evidence can be ... quite misleading,' [so] a court under Rule 403 should 'exercise[] more control over experts than over lay witnesses.'" *Id.* (quoting *Daubert*, 509 U.S. at 595).

First, Mr. Courrege's "analysis" of the video does not assist the trier of fact, which is competent to view the video and come to its own conclusions as to what it shows, and should therefore be excluded. Mr. Courrege does not provide any insight about the dashcam video based on his expertise. Ex. C at 161:3–162:16, 163:3–14. He in fact admitted at his deposition that "you don't have to be an expert" to analyze this video footage. *Id.* at 161:25–162:4. Courts within the Fifth Circuit routinely exclude experts from opining on video evidence under FRE 702(a) for this very reason. *See, e.g., Day*, 2020 WL 7024478, at *5 (excluding certain testimony of a police practices expert where he "is not in a better position [than the jury], despite his law

enforcement expertise, to opine as to whether the [video] evidence establishes [] excessive force"); *Castro v. Wal-Mart Real Estate Business Trust*, 645 F. Supp. 3d 638, 645 (W.D. Tex. 2022) ("A number of courts have addressed expert testimony on video recordings and have concluded that the expert should not be permitted to interpret the video's contents where the expert is no better suited than a lay person to do so."); *Williams v. City of Houston, Tex.*, No. H-16-3342, 2019 WL 2435854, at *6 (S.D. Tex. June 11, 2019) (excluding police practices expert's testimony about what video recordings show because it was within jury's lay knowledge). By his own admission, Mr. Courrege does not rely on any expertise in making judgments about what the video shows; his opinions should be excluded lest they be unduly accorded the imprimatur of expertise and prejudice the trier of fact.

Second, Mr. Courrege's opinions that the video evidence debunks Mr. Clark's account of the incident are impermissible credibility determinations of fact witnesses that should be reserved for the jury, and also run the danger of unfairly prejudicing and misleading the jury. *See* Fed. R. Evid. 704, 403. Credibility determinations are "not permitted by Rule 704 because it is for the jury to judge the credibility of a witness." *Hagan v. Jackson Cnty., Mississippi*, No. 1:13CV268-HSO-RHW, 2016 WL 1091107, at *6 (S.D. Miss. Mar. 21, 2016); *see also McBroom v. Payne*, 478 F. Appx 196, 200 (5th Cir. 2012) (affirming exclusion of police practices expert testimony where the expert attempted to make credibility assessments of fact witnesses). And yet, at the heart of Mr. Courrege's report is his conclusion that Mr. Clark's account of the incident is false and that he is not credible. *See* Ex. B at 10, (opining that the video evidence "appears to debunk" Mr. Clark's testimony he did not resist Defendants); 17 (opining the video evidence "refutes" Mr. Clark's allegations related to Defendant McCullough); 12 ("*Despite the dispute in testimony*, a review of the video supports [Defendant] Hotard's

description of the resistance.") (emphasis added). At deposition, Mr. Courrege admitted his opinion is that Mr. Clark's account is discredited by the video evidence. *See* Ex. C at 160:12–15. Mr. Courrege's opinions about the credibility of Mr. Clark's statements should be excluded because "[t]here is no need for an expert in law enforcement training to offer his opinion as to which witnesses should be believed." *Amin-Akbari v. City of Austin, Tex.*, 52 F. Supp. 3d 830, 846 (W.D. Tex. 2014); *see also Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (per curium) (affirming exclusion of certain testimony of an expert where he provided credibility determinations of fact witnesses).

### D. Mr. Courrege's Analysis of the *Graham* Factors Draws Impermissible Legal Conclusions

Though Rule 704 abolished the *per se* rule against testimony regarding ultimate issues of fact, courts must still ensure that an expert witness does not usurp the court in instructing the jury about the applicable law and how to apply that law to the facts. *See Manton v. Strain*, No. CIV.A. 09-0339, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010) (citing *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)). "The judge is the source of the law and the only expert needed by a jury." *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985). Legal conclusions are inadmissible expert testimony because they "both invade[] the court's province and [are] irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 342 (M.D. La. 2021) (DeGravelles, J.) (excluding experts' testimony under FRE 704 where they give legal conclusions).

Mr. Courrege makes an impermissible legal conclusion that must be excluded when he applies the three *Graham* factors and concludes that Defendants "had an interest" in using force on Mr. Clark. Ex. B at 11. The factors in *Graham v. Connor* are used to evaluate whether

officers were "excessive" or "unreasonable" in their use of force. *See, e.g.*, *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)); *see also* Pattern Jury Instructions (Civil Cases), Fifth Circuit at 90 (rev. 2020)[3] (citing *Graham*, 490 U.S. at 396). It is improper for a police practices expert to "testify that the conduct of the [] police officers met or failed to meet the applicable legal standard, such as the 'reasonableness' of the [] police officers' use of force." *Joseph v. Doe*, No. CV 17-5051, 2021 WL 2313475, at *4 (E.D. La. June 7, 2021). In his report, Mr. Courrege identifies *Graham* as the relevant legal standard, analyzes the three *Graham* factors and concludes that "there was a government interest in using some force to detain Mr. Clark." Ex. B at 11. Though Mr. Courrege states that his opinions regarding the *Graham* factors are not legal conclusions and he did not intend to usurp the role of the jury, *see* Ex. B at 11, his disclaimer holds no water. *See Bailey v. Ramos*, No. SA-20-CV-00466-XR, 2022 WL 17658641, at *4 (W.D. Tex. Nov. 21, 2022) (excluding police practice expert's impermissible legal conclusions under FRE 704 even though the expert's report contained a disclaimer that his report was "not intended to draw legal conclusions"). As Mr. Courrege acknowledged, the *Graham* analysis is the "road map" the jury will use to determine whether Defendants' actions were "objectively reasonable," *see* Ex. C at 121:24–122:1, making his testimony about the *Graham* factors the paragon of a legal conclusion.

Mr. Courrege's *Graham* testimony is rife with the impermissible frame of "reasonableness" for which police practices experts, including Mr. Courrege, are routinely excluded. *See, e.g., Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923, 930 (M.D. La. 2021) (excluding the majority of a purported police practices expert's testimony where he analyzed

---

[3] https://www.lb5.uscourts.gov/juryinstructions/Fifth/2020civil.pdf

officers' actions through the impermissible frame of reasonableness and necessity).[4] As to the first *Graham* factor, Mr. Courrege states that, "in this case, I think obstruction of justice is a *perfectly reasonable* belief. The resisting is a *perfectly reasonable* belief." Ex. C at 128:3–5 (emphasis added). Regarding the second *Graham* factor, Mr. Courrege opines that, "I think because that immediate threat [of Mr. Clark] wasn't so great that really shows *how reasoned that [Defendant's] decision making was* in not doing that take down to the ground." *Id.* at 130:16–19 (emphasis added). And in describing Defendants' actions in relation to the *Graham* factors, he testifies that "they exercised [] *restraint*." *Id.* at 134:7–8 (emphasis added). Such testimony is inadmissible because it evaluates evidence and makes legal conclusions. *See, e.g.*, *Brown*, 2010 WL 3523026, at *2 (excluding police practices expert's testimony as impermissible legal conclusions where he used the language "deliberate" and "reasonable").

Courts across the country have consistently held that police practices experts' analysis of the *Graham* factors is excludable, especially where they engage in a step-by-step analysis of the factors and conclude that officers did or did not have a reasonable interest in the use of force. *See, e.g., O'Hara, v. Lott*, No. 4:23CV442 HEA, 2025 WL 2549231, at *14–15 (E.D. Mo. Sept. 4, 2025) (excluding defendants' police practices expert where he, *inter alia*, opined on how "the evidence...does or does not meet each factor of *Graham v. Connor*" and ultimately concluded "the key factors in *Graham v. Connor* had been met"); *Trexler v. City of Belvidere*, No. 3:20-CV-50113, 2023 WL 415184, at *4 (N.D. Ill. Jan. 25, 2023) ("[B]arr[ing police practices expert] from referencing or applying the standards set forth in *Graham v. Connor* because any opinion or

---

[4] *See also State of Louisiana v. Byron Franklin*, 24-502, 2024 WL 4875633 (La. App. 5 Cir. 11/22/24) (limiting Mr. Courrege's opinion under Louisiana state law because his "testimony would be based on a finding of 'reasonableness' specific to this case").

application of the standards are legal conclusions on a determinative issue.").[5] What Mr. Courrege has done is no different, and his *Graham* factors analysis should therefore be excluded.

### E. Mr. Courrege's Opinions About the Alleged Unlawfulness of Mr. Clark's Actions During the Incident Are Irrelevant Legal Conclusions

Mr. Courrege's opinion should also be limited to exclude legal conclusions about Mr. Clark's actions during the incident, which have no bearing on the issues in this case. Expert opinions about whether certain actions violated the law, or whether there was probable cause for an arrest constitute impermissible legal conclusions. *See Joseph*, 2021 WL 2313475, at *4 n.43 (limiting police practice expert's testimony where he "opined that Decedent's actions constituted violations of state criminal law during the incident. Such an opinion is a legal conclusion and is [] barred"). These opinions must also be excluded because they do not relate to any element of the claims in the present litigation and are therefore irrelevant. *See Meganathan v. Signal Int'l L.L.C.*, No. 1:13-CV-497, 2015 WL 11109846, at *8–9 (E.D. Tex. June 26, 2015).

Mr. Courrege's testimony features two legal conclusions opining on the legality of Mr. Clark's actions, neither of which are at issue in this matter. First, Mr. Courrege asserts that—assuming there was crack cocaine in the $20 bill—Mr. Clark violated La. R.S. 14:130.1 when he grabbed the bill back, which constitutes Obstruction of Justice. Ex. B at 10 and 11. Second, Mr.

---

[5] *See also Dold v. Snohomish Cnty.*, No. 2:20-CV-00383-JHC, 2023 WL 123335, at *4 (W.D. Wash. Jan. 5, 2023) (excluding the entirety of a police practices expert's testimony where "[m]ost of [his] report is spent applying the factors announced in *Graham v. Connor* [] to the present case"); *Donastorg v. City of Ontario*, No. EDCV 18-992JGB (SPX), 2021 WL 4051170, at *3 (C.D. Cal. June 4, 2021) (excluding police practices expert's "opinions as to the *Graham* standard because they were 'not helpful to the jury because they constitute impermissible legal conclusions'"); *Dudas v. Engel*, No. 1:19 CV 2565, 2021 WL 2000579, at *6 (N.D. Ohio May 17, 2021)) (excluding police practices expert's testimony where "the basis of [the expert]'s opinion is his application of the facts to the factors enunciated in *Graham v. Conner*"); *Becker v. City of Evansville*, No. 312CV00182TWPMPB, 2016 WL 6395868, at *6 (S.D. Ind. Oct. 28, 2016) (holding police practices expert "may not offer an opinion on whether [the] Officer[]'s use of force violated the directives and standards established in *Graham v. Connor*").

Courrege opines that, due to Mr. Clark's actions, "it would be consistent with police practices to charge Mr. Clark with La. R.S. 14:108, Resisting an Officer." *Id.* at 10.[6] The validity (or lack thereof) of these two charges do not bear on the three live claims in this matter: Intentional Racial Discrimination, Excessive Force, and Negligence in Handcuffing. Mr. Courrege's assertions are precisely the type of legal conclusions that courts in the Fifth Circuit frequently exclude. *See, e.g.*, *Meganathan*, 2015 WL 11109846, at *9 (excluding expert's opinion where he "opin[ed] that [a party's] conduct was a violation of the law—this is the very essence of a legal conclusion" even where no cause of action turned on the alleged violation of the law). Given Mr. Courrege's opinions regarding the lawfulness of Mr. Clark's actions are irrelevant legal conclusions, they should be excluded under FRE 702 and 704.

**F. Mr. Courrege's Other Opinions Do Not Bear on Any Live Claim in the Case**

Finally, Mr. Courrege's opinions should be excluded to the extent they exceed the live claims in this litigation. *See Howard v. Dir*., TDCJ-CID, No. 1:13-CV-256, 2019 WL 4573640, at *37 (E.D. Tex. Sept. 20, 2019) (excluding expert report where it asserted opinion "not relevant to the live issues before the Court"). Mr. Courrege opines at length about the purported legality of the initial stop and warrantless search of Mr. Clark, which are not open issues in this case. *See* Ex. B at 7–11 ("[I]t is my opinion that the traffic stop, subsequent search of the truck and Mr. Clark's person, and arrest of Mr. Clark were consistent with generally accepted police practices

[6] In addition to being impermissible legal conclusions, neither opinion has a basis in fact making them excludable under FRE 702(b). Mr. Clark was found not guilty of resisting an officer after a full trial and a judge's review of the same video at issue in this case. *See* Ex. E, Minutes of Mr. Clark's Criminal Trial at 42:12–43:9. The charge of obstruction was only brought nearly two years after the arrest, days before the statute of limitations would run. *See id.* 4:1–12. Finally, Mr. Clark was only charged and convicted of with *misdemeanor* obstruction of justice, not a felony as Mr. Courrege inappropriately includes in his analysis of the second factor of the *Graham* test. *See id.* at 42:12–43:9; Ex. B at 11.

and training."); ECF No. 136 at 17 (Order on LPSO Defendants' Motion to Dismiss). Furthermore, there are no live claims regarding "108" calls, yet Mr. Courrege still offers his opinion on this now-defunct aspect of the FAC. *See* Ex. B at 17; ECF No. 160 at 16 (Order on Denham Springs Defendants' Motion to Dismiss). In *Gage v. Jenkins*, a police practices expert was excluded from opining about the defendant-officers' actions not at issue in the case as the court held that such irrelevant opinions "will not reliably assist the jury in resolving [a] contested issue in this case." No. CV 13-0638-SDD-EWD, 2017 WL 2190064, at *5 (M.D. La. May 18, 2017). Like in *Gage*, Mr. Courrege's opinions related to dismissed aspects of the case are irrelevant, will not reliably assist the jury, and thus should be excluded.

## V. CONCLUSION

Accordingly, Plaintiff requests that the Court limit Mr. Courrege's opinion to that of his proffered expertise and exclude all opinions related to statistics, racial discrimination, causation, the reasonableness of Defendants' actions and the *Graham* factors, witness credibility, and other opinions not relevant to the claims in this matter based on Federal Rules of Evidence 702, 704, and 403.

By: /s/ Joshua Z. Behrens

Joshua Z. Behrens (*pro hac vice*)
Marjorie H. Menza (*pro hac vice*)
Sara Haji (*pro hac vice*)
SOCIAL JUSTICE LEGAL FOUNDATION
523 West 6th St., Suite 450
Los Angeles, CA 90014
T: 213-677-0883
F: 213-677-0883
jbehrens@socialjusticelaw.org
mmenza@socialjusticelaw.org
shaji@socialjusticelaw.org

/s/ *Emma Douglas*
Emma Douglas (La. Bar No. 39076)
**Southern Poverty Law Center**
201 Saint Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Telephone: (225) 316-6709
emma.douglas@splcenter.org

/s/ *Andrea Alajbegovic*
Andrea Alajbegovic (*pro hac vice*)
**Southern Poverty Law Center**
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
Telephone: (601) 265-8309
andrea.alajbegovic@splcenter.org

/s/ *Nora Ahmed*
Nora Ahmed (*pro hac vice*)
Malcolm Clark Lloyd (La. Bar No. 41573)
ACLU FOUNDATION OF LOUISIANA
1340 Poydras Street, Suite 2160
New Orleans, Louisiana 70112
Telephone: (504) 522-0628
nahmed@laaclu.org
mlloyd@laaclu.org
justicelab@laaclu.org

Attorneys for Plaintiff Alexander Clark