# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Alexander Clark,<br><br>    Plaintiff,<br>vs.<br><br>Livingston Parish Sheriff's Office;<br>Deputy Jean Hotard;<br>Deputy Calvin Taylor Bowden;<br>Sheriff Jason Ard;<br>Denham Springs Police<br>Officer Sydney McCullough;<br>Chief J. Shannon Womack; and City of<br>Denham Springs,<br><br>    Defendants. | CASE NO. 22-326-JWD-RLB<br><br>JUDGE JOHN W. DEGRAVELLES<br><br>MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |

## PLAINTIFF'S OPPOSING STATEMENT OF MATERIAL FACTS

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff Alexander Clark, who, in support of his accompanying Opposition to Defendants Livingston Parish Sheriff's Office, Deputy Jean Hotard, Deputy Calvin Taylor Bowden, and Sheriff Jason Ard's Motion for Summary Judgment and in accordance with Local Civil Rule 56(c), submits the following opposing statement of material facts.

### RESPONSES AND OBJECTIONS TO DEFENDANTS' STATEMENT OF UNCONTESTED FACTS

1. Plaintiff, Alexander Clark, was convicted of violating La. R.S. 14:130.1, Obstruction of Justice, arising out of the stop, and arrest made subject of this lawsuit.

**Plaintiff's Response: Qualified.** This statement is denied as an immaterial fact. For the purposes of this summary judgment opposition, Mr. Clark admits that he was criminally convicted in connection with the traffic stop, though the conviction is immaterial to the issues on summary judgment as the judge explicitly declined to convict Mr. Clark of Resisting an Officer. ECF No. 89, ¶¶ 112.

2. The video of this incident depicts plaintiff snatching the $20 bill, which was evidence in the incident, from Deputy Hotard's grasp.

**Plaintiff's Response: Denied.** Mr. Clark retrieved a $20 bill that was removed from his pocket by officers without a valid reason. At no point did officers collect physical evidence of illegal drugs, test the bill for illegal drugs, and Mr. Clark was not charged with possession of any illegal drugs. Defendant Bowden acknowledged contemporaneously that the substance on the bill was potentially sheetrock from Mr. Clark's work. ECF No. 172-4; Bowden Dep. Tr. at 111:17–20, 115:12–19; 2021-05-25_00-19-00_CBOWDEN at 1:34.

3. The video of this incident depicts the arrest of plaintiff, showing Deputy Hotard and Deputy Bowden placing plaintiff's hands behind his back.

**Plaintiff's Response: Qualified.** This statement is denied insofar as it characterizes the actions of Deputy Hotard and Deputy Bowden as "placing" Mr. Clark's hand behind his back, when in actuality the Deputies aggressively grabbed his arms behind his back to restrain and then handcuff him. Ex. , 2021-05-24_23-48-00_LELLIS at 23:48:00-23:53:00.

4. At no time did Deputy Hotard or Deputy Bowden take plaintiff to the ground.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact.

5. At no time did Deputy Hotard or Deputy Bowden place plaintiff against a vehicle or any other object.

**Plaintiff's Response: Denied.** In the course of the LPSO Defendants' arrest of Mr. Clark, Defendant Hotard pushed Mr. Clark against the truck prior to handcuffing him. Ex. , 2021-05-24_23-48-00_LELLIS at 23:48:00-23:53:00.

6. At no time did Deputy Hotard or Deputy Bowden strike, kick, or punch plaintiff.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact.

7. At no time did Deputy Hotard or Deputy Bowden draw any weapons on plaintiff.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact.

8. Deputy Hotard checked the handcuffs placed on plaintiff for tightness and double locked the handcuffs.

**Plaintiff's Response: Denied.** Mr. Clark was in handcuffs that were too tight and causing him pain for ten minutes. According to Plaintiff's Police Practices Expert, Dan Busken, if Deputy Hotard had checked the handcuffs and double locked the handcuffs, there would have been no need for him to loosen him later. Busken Report at 23; Clark Dep. Tr. at 73.

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. Defendant Hotard stopped Mr. Clark at a gas station in Denham Springs on the night of May 24, 2021, for failing to use his turn signal. Ex. 1, Hotard Dep. Tr. at 118:10-12.

2. Mr. Clark was cooperative as Defendants Hotard and Bowden questioned him and searched his truck for over twenty minutes. Ex. 4, LELLIS 1_2021-05-24_23-38-00_LELLIS; Ex. 5, 1_2021-05-24_23-43-00_LELLIS; Ex. 23, Courrege Dep. Tr. at 136:6–10.

3. During the search of Mr. Clark's vehicle, Defendant Bowden made comments like "give me the crack" and "where's the crack?" ECF No. 172-4; Ex. 9, Bowden Dep. Tr. at 125:11–25; Ex. 10, Calvin Taylor Bowden's Interrogatory Responses, Set Two, Question 1.

4. Defendants Hotard and Bowden questioned Mr. Clark about multiple items found in his truck and on his person, including a prescription bottle for gout, a quick connect tool, and a $20 bill, but none of the items were removed for evidence in a criminal investigation. Ex. 6, 2021-05-24_23-48-00_LELLIS at 23:48:00-23:53:00; Ex. 1, Hotard Dep. Tr. at 146:22-25, 147:1-25, 148:1-2.

5. Defendant Bowden, upon examining Mr. Clark's $20 bill, stated that the bill could have contained sheet rock rather than crack cocaine, consistent with Mr. Clark's employment as a drywaller. ECF No. 172-4; Ex. 9, Bowden Dep. Tr. at 111:17–20, 115:12–19; Ex. 24, 2021-05-25_00-19-00_CBOWDEN at 1:34.

6. Defendants Bowden and Hotard gave Mr. Clark no time to comply with verbal commands to place his hands behind his back. Ex. 7, 1_2021-05-25_00-14-00_CBOWDEN at :55-57; ECF No. 171-6 at 2:26.

7. Defendants Hotard and Bowden's arrest and handcuffing of Mr. Clark resulted in injuries, including a broken hook of hamate and two ruptured tendons in Mr. Clark's right hand, as well as an exacerbated hip injury that led to a hip replacement. Ex. 14, Garon Dep. Tr. at 20:9-18; Ex. 2, Clark Dep. Tr. at 36:1-10, 17-20.

8. Mr. Clark was diagnosed with post-traumatic stress disorder (PTSD) as a result of Defendant Hotard and Bowden's actions on May 24th, 2021. Ex. 15, Carter Report at 20.

9. Mr. Clark was not smoking crack prior to his arrest on May 24th, 2021. Ex. 7, 1_2021-05-25_00-14-00_CBOWDEN at 1:52–2:12; ECF No. 172-3; Ex. 2, Clark Dep. Tr. at 81:1–3.

10. Mr. Clark was initially arrested for resisting an officer and failing to use a turn signal. ECF No. 89, ¶¶ 110.

11. Twenty months after his arrest, Mr. Clark was charged with obstruction of justice. ECF No. 89, ¶¶ 112.

12. The District Attorney dropped the charge against Mr. Clark for failing to signal. ECF No. 89, ¶¶ 111.

13. Mr. Clark was acquitted on the charge of Resisting an Officer. ECF No. 89, ¶¶ 112.

14. In 2020 and 2021, adult Black residents comprised 7.9% of the total population and 7.3% of the adult population in Livingston Parish. Ex. 12, Abraham Report at 5.

15. Though Black people represent only 7.9% of the population in Livingston Parish, 35.4% of police reports for traffic violations are for Black people. *Id.* at 7.

16. LPSO does not compile data on traffic arrest reports by race, nor does it have the technology necessary to filter and report its traffic and arrest reports by race. Ex. 13, Menza Decl.

17. LPSO does not conduct any training regarding racial profiling or bias for its deputies. Ex. 9, Bowden Dep. Tr. at 28:17-29:14; Ex. 1, Hotard Dep Tr. at 64:22 – 65:7.