# EXHIBIT 13

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Alexander Clark,<br><br>  Plaintiff,<br>vs.<br><br>Livingston Parish Sheriff's Office;<br>Deputy Jean Hotard;<br>Deputy Calvin Taylor Bowden;<br>Sheriff Jason Ard;<br>Denham Springs Police<br>Officer Sydney McCullough;<br>Chief J. Shannon Womack; and City of<br>Denham Springs,<br><br>  Defendants. | CASE NO. 22-CV-00326-JWD-RLB<br><br>**DECLARATION OF MARJORIE J. MENZA IN SUPPORT OF PLAINTIFF'S RESPONSE TO LPSO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

- 2 -

## DECLARATION OF MARJORIE MENZA

I, Marjorie Menza, declare as follows:

1. I am an attorney at law admitted *pro hac vice* before this Court. I am a member of the Social Justice Legal Foundation, counsel of record for Plaintiff Alexander Clark in this action. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. On December 23, 2024, Plaintiff issued Requests for Production 22, 23 and 24 (Set Two) to Sheriff Ard seeking data regarding the department wide traffic citation practices of the Livingston Parish Sheriff's Office. A true and correct copy of that Request for Production is attached hereto as Exhibit 1.

3. That same day, counsel for Plaintiff, the Social Justice Legal Foundation, sought substantially similar records from the Livingston Parish Sheriff's Office by way of a Public Records Request, mailed to the Livingston Parish Sheriff's Office P.O. Box (as directed). A true and correct copy of that Public Records Request is attached hereto as Exhibit 2.

4. On January 13, 2025, Livingston Parish Sheriff's Office Chief Legal Counsel, Druit Gremillion, contacted Social Justice Legal Foundation to discuss the December 23, 2024 Public Records Request. Because the Public Records Request sought the same information sought in Requests for Production 23 and 24, the parties agreed to combine discussions to satisfy both outstanding demands. A true and correct copy of email correspondence coordinating a meet and confer is attached hereto as Exhibit 3.

5. On January 30, 2025, I spoke by telephone with Mr. Gremillion regarding the Public Records Request and Plaintiff's Requests for Production 23 and 24. I explained to Mr. Gremillion that the data, gathered by race, was relevant to Plaintiff's Title VI claim as against the Livingston Parish Sheriff. Mr. Gremillion said that given the scope of the request, complying would result in would be thousands of pages which he would have to personally

review. Plaintiff agreed to narrow the scope of the request by time (seeking two years only). A true and correct copy of the email memorializing that discussion is attached hereto as Exhibit 4.

6. On February 7, 2025, Defendant Livingston Parish Sheriff's Office issued Defendants' Responses and Objections to Plaintiff's Second Set of Requests for Production, Number 25. A true and correct copy of Defendant Livingston Parish Sheriff's Office Responses and Objections to Plaintiff's Second Set of Requests for Production is attached hereto as Exhibit 5.

7. I continued communicating with Livingston Parish Sheriff's Office counsel and Chief Legal Officer regarding the production of documents and/or data pursuant to Plaintiff's Requests for Production 23 and 24. During those communications, Mr. Gremillion explained that the Sheriff's Office does not have an electronic means to search, sort and produce its traffic related incident reports by race and instead, Mr. Gremillion would have to print out reports, redact necessary data as well as manually enter them into an excel sheet in order for the data to be statistically analyzed. Mr. Gremillion also explained that in order to achieve a representative sampling for both parties' experts, he would query only traffic violations reported by the Criminal Patrol Division at LPSO. A true and correct copy of email correspondence memorializing these conversations is attached hereto as Exhibit 6.

8. Over the course of correspondence, Mr. Gremillion also explained that traffic violations where only a traffic ticket is issued by a deputy with the Livingston Parish Sheriff's Office (*i.e.,* without further violations or arrests) are scanned by the Sheriff's secretary prior to being sent to the District Attorney. They are not otherwise maintained in a searchable electronic database by the Sheriff's Office. *See* Exhibit 6

9. To that end, I worked with Malcolm Lloyd, an attorney with the ACLU of Louisiana and counsel for Mr. Clark and identified, via additional public records requests, traffic tickets issued and available at the Livingston Parish Courthouse for printing. A true and correct copy of correspondence from my office with the Livingston Parish Courthouse is attached hereto as Exhibit 7.

- 4 -

10. Mr. Lloyd then printed out at the Courthouse scans all LPSO-issued traffic tickets from 2020 and 2021, which were then sent to Plaintiff's expert, Dr. Sarah Abraham, for statistical analysis.

11. On June 20, 2025, Plaintiff produced to Defendant Livingston Parish Sheriff's Office Bates-stamped copies of the tickets retrieved from the Livingston Parish Courthouse. A true and correct copy of production correspondence is attached hereto as Exhibit 8.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of October, 2025, at Los Angeles, California.

_____
Marjorie Menza